UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VICTORIA HAMILTON ,

Plaintiff,

v.

UNUM LIFE INSURANCE
COMPANY OF AMERICA,

Defendant.

_____/

Case No. 20-cv-11119

U.S. DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM ERISA DECISION [#13] AND DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD [#12]

## I.      INTRODUCTION

On May 5, 2020, Plaintiff filed the instant action against Defendant Unum Life Insurance Company of America ("Unum") pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132 *et seq*. Presently before the Court are the following motions, both filed on April 20, 2021: (1) Plaintiff's Motion for Judgment on the Administrative Record, and (2) Defendant's Motion to Affirm ERISA Decision.  The parties' motions are fully briefed, and a hearing was held on December 21, 2021.  For the reasons that follow, the Court grants Defendant's Motion to Affirm ERISA Decision and denies Plaintiff's Motion for Judgment on the Administrative Record.

## II.     FACTUAL BACKGROUND

Plaintiff began working for AVI as a Conference Plan Coordinator on December 13, 2004.  ECF No. 10, PageID.59.  As part of her employment, Plaintiff participated in Group LTD Policy No. 212737 001 ("the Plan") issued by Defendant Unum to AVI.  Under the Plan, an AVI employee is eligible for benefits when Defendant UNUM determines that:

- you are disabled from performing the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your indexed monthly earnings due to the same sickness or injury.

    After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training, or experience.
    You must be under the regular care of a physician in order to be considered disabled.

ECF No. 10, PageID.224.  Certain disabilities have a limited pay period of 24 months under the Plan, including "all disabilities due to mental illness and disabilities based primarily on self-reported symptoms[.]"  *Id.,* PageID.231.  The Plan defines self-reported symptoms as "the manifestations of your condition which you tell your physician, that are not verifiable using tests, procedures or clinical examinations standardly accepted in the practice of medicine.  Examples of self-reported symptoms include, but are not limited to headaches, pain, fatigue,

stiffness, soreness, ringing in ears, dizziness, numbness and loss of energy." *Id.*,

PageID.244.

In June of 2016, Plaintiff was suffering from fibromyalgia, radiculopathy,

neuropathy, and chronic pain when her symptoms became more severe.  ECF No.

10, PageID.125.  Plaintiff had been treating with Dawit Teklehaimanot, D.O. since

2010 for these symptoms.  *Id*.  Because of Plaintiff's worsening symptoms, Dr.

Teklahiamnot took her off of work and submitted paperwork in support of her

claim for disability benefits under the Plan.  *Id*. at PageID.119.    Plaintiff's last

day of work was June 16, 2016.  *Id.,*  Plaintiff applied for short term disability

benefits on June 22, 2016.  *Id.*    Defendant approved Plaintiff's claim on January

31, 2017 with benefits beginning December 19, 2016.

In support of her claim for benefits, Dr. Teklehaimanot opined that Plaintiff

had the following limitations: "no pulling, pushing, lifting, no stressful

environment." *Id*.  Dr. Teklehaimanot relied on a June 15, 2016 MRI of the

cervical spine, which he claimed revealed "significant dystonia . . . at C5-C6

multiple facet arthrosis and also degenerative disc disease in the cervical spine."

*Id.*, PageID.125; see also PageID.131.  Specifically, the  June 15, 2016 MRI states

in relevant part:

> CLINICAL HISTORY: Neck pain, radiating to both upper
> extremities, headaches.  Degenerative disc disease, radiculopathy.
> *            *            *

FINDINGS:  There is loss of the cervical lordosis.  Anterior and posterior vertebral body osteophyte ridging is present, greatest at C5-6.  Cervicomedullary junction demonstrates no Chiari malformation.  Caliber of the cervical spinal cord is normal.  No abnormal signal is present within the cervical spinal cord.

C2-3:  No disc herniation, central canal or neuroforaminal stenosis.

C3-4:  Minimal disc bulge without canal stenosis.

C4-5:  Very mild disc bulge without significant canal stenosis.

C5-6:  Slightly superiorly extruded central and left paracentral disc herniation with associated posterior vertebral body osteophyte results in mild central canal stenosis.  No neuroforaminal stenosis.

C6-7:  No disc herniation, central canal or neuroforaminal stenosis.

C7-T1:  No disc herniation, central canal or neuroforaminal stenosis.

_____
IMPRESSION:
1.  Loss of the cervical lordosis.
2.  C3-4 demonstrates a minimal disc bulge; C4-5 demonstrates a very mild disc bulge.  No significant resultant canal stenosis is present at either of these levels.
3.  C5-6 demonstrates a slightly superiorly extruded chronic central and left paracentral disc herniation with associated posterior vertebral osteophyte resulting in mild central canal stenosis, greatest left paracentrally.  No cervical spinal cord deformity or neuroforaminal stenosis is present.

*Id*., PageID.131.

In July of 2016, Dr. Teklehaimanot noted Plaintiff appeared for examination with complaints of pain in her upper and mid back, both shoulders, her neck, both knees, both arms, both hands and a headache.  *Id.* at PageID.139.  Dr. Teklehaimanot provided a trigger point injection in the cervical spine.  *Id.*   The

4

following month, Plaintiff reported that physical therapy had not been beneficial and that she could not sit or stand for too long without pain.  She noted she could not hold a cup of coffee. *Id.*   Dr. Teklehaimanot reported a possible multiple sclerosis diagnosis could not be ruled out.  *Id.*

Dr. Teklehaimanot ordered an MRI of the brain in September of 2016, which revealed the following:

> A 6 mm focus of hyperintense T2 and FLAIR signal abnormality is seen adjacent to the frontal horn of the left lateral ventricle (axial series image 15). No associated mass effect or abnormal enhancement is demonstrated to this lesion.  Additional tubular cluster of hyperintense T2 and Flair signal abnormality is present along the genu of the corpus callosum and the callososeptal interface in the left frontal region.  Postcontrast images demonstrate enhancement associated to these rounded foci of signal abnormality.  Findings are concerning for demyelinating plaques.  Please correlate clinically for multiple sclerosis.  Migraine induced ischemia or low-grade neoplasm could also be considered.  Recommend a short-term follow up examination to ensure stability.

*Id*. at PageID.176-77.

Plaintiff was evaluated by Surendra Jolly, a neurologist, who concluded Plaintiff had fibromyalgia, but demyelinating disease needed to be ruled out.  *Id*., PageID.187-88.   In November, Dr. Teklehaimanot examined the Plaintiff and opined that a review of her musculoskeletal system supported her reports of low back pain, bilateral leg pain, neck pain, shoulder pain, and joint swelling.  *Id*., PageID.203-04.  He noted the pain from carpel tunnel syndrome and concluded she was not ready to return to work. *Id*. In his examination notes, he noted positive

findings with Tinel and Phalen tests in both hands. *Id*.  Dr. Teklehaimanot

discussed strengthening her pain medication and he provided a handout on the risk

of addiction.  *Id*.

In December, Dr. Teklehaimanot referred Plaintiff for imaging studies of her

low and mid-back.  A study of her lumbar spine revealed disc protrusion at L4-L5

and lumbar spondylosis with facet arthropathy with no significant central canal

stenosis but with mild right-sided neuroforaminal narrowing at L4-L5.  The mid-

spine MRI study revealed small left disc protrusion at T1-2 and T7-8, T2-3 and T5-

6.  A CT scan of Plaintiff's feet around this same time revealed minimal first

metatarsal arthrosis on the right and minimal irregularity of the third metatarsal

head on the left.

In March of 2017, Dr. Teklehaimanot examined Plaintiff and reported that

she still had multiple tender points with a history of fibromyalagia and that she had

significant pain due to plantar fasciitis.  She had pain in her neck, shoulder, and

medial border of the scapular, as well as tingling and numbness in the dorsal aspect

of the thumb and index finger with weakness in biceps.  Spurling's test and

Lhermitte's sign were both positive.  Active range of motion of the rotator cuff was

limited.  Exam notes also reveal mild tenderness over the greater tuberosity was

present on palpation as well as atrophy of the paraspinous. Dr. Teklehaimanot

performed other tests, which were all positive including drop arm test, flick sign,

Tinel test and Phalen maneuver.  He further noted positive Patrick, Gaenslen's, Gillet and Yeoman's tests.  He continued Plaintiff's pain medications.

In the spring of 2017, Plaintiff's pain escalated to the point where Dr. Teklehaimanot increased her pain medication again.  He diagnosed Plaintiff with lumbar radiculopathy, myositis, and fibromyalgia. In May, Defendant contacted Plaintiff to inform her she needed to file for social security disability insurance and referred her to Genex for assistance.  *Id.*, PageID.432.  Genex filed an application for social security benefits on behalf of Plaintiff on June 26, 2017.  *Id.*, PageID.450.

On January 24, 2018, Dr. Teklehaimanot noted that Plaintiff was extremely sensitive to palpation and had multiple tender points and trigger points.  *Id.,* PageID.709.

After Defendant contacted Dr. Teklehaimanot in January and March of 2018, Dr. Teklehaimanot responded that Plaintiff's current restrictions were "no pulling, pushing, lifting > 30 lbs, no stressful environment, no standing & sitting for too long, no cold environment[.]"  *Id.*, PageID.702.  His report of an office visit on January 24, 2018 noted that "[p]atient has come for follow-up visit with complain[ts] of lower back pain radiating to lower extremities with tingling and numbness at lower extremities, chronic neck pain with radiating pain to upper extremities with tingling & numbness at upper extremities."  *Id.*, PageID.707.

7

Plaintiff indicated that the "current treatment plan has been helping her" and denied "any side effects with current medications." *Id*.  Dr. Teklehaimanot noted that she "tried to perform ADLS/IADLS activities, patient able to function with the help of medications." *Id*. Plaintiff was given a trigger point injection and Dr. Teklehaimanot further reported that "[t]he combination of medication physical therapy besides treatment trigger point injections seems to be helping." *Id*.

In a March 2018 phone call with Defendant's representative, Dr. Teklehaimanot clarified that the restriction "no stand/sit for too long" is based on the symptoms worsening over time. *Id*., PageID.738.  He indicated she could do neither for longer than one hour.  Dr. Teklehaimanot explained that she ""may be able to do sedentary work" if she is permitted "to get up every so often." *Id*. Based on Dr. Teklehaimanot's statements, Defendant's representative concluded Plaintiff's restrictions "would not disable her from performing her own" occupation. *Id*., PageID.744.

Defendant's representative advised Plaintiff that there was no support for long term disability benefits. *Id*.  Plaintiff requested that Defendant's representative contact Dr. Teklehaimanot again because "this has to be a misunderstanding as she is bed ridden most of the time." *Id*  She requested that she be permitted a few days to reach out to him first, but the representative declined

and indicated he would not delay in speaking with Dr. Teklehaimanot to try and clarify Plaintiff's restrictions.  *Id.*

On April 1, 2018, Dr. Teklehaimanot sent updated records to Defendant, including a March 21, 2018 office visit note that indicated Plaintiff had normal gait and muscle strength of "5/5" on every measurement.  *Id*., PageID.777.  His diagnosis was "chronic myalgia myositis, fibromyalgia, pain syndrome, neuropathy, neck pain, and lower back pain.  *Id*. The plan was to continue with medications as prescribed and a home exercise program along with trigger point injections.  *Id.*

A few days later, Dr. Teklehaimanot sent a one-page letter addendum to Defendant indicating he wanted to add a few more restrictions for Plaintiff, "a very complicated patient" with "numerous medical issues[,]" including "rheumatological, muscoskeletal, [and] psychological" conditions such as "anxiety and depression."  *Id.,* PageID.785.  Dr. Teklehaimanot's addendum letter added the following:

> #1  She should not pull, push, lift more than 5 pounds due to severe neck pain with radiculopathy in her hands and neuropathy as well
>
> #2  She should not get involved in representative activities
>
> #3  She should not involve herself in abrupt motion because of the neck pain and discrimination

#4  She should not be involved in any type of repetitive computing work more than 15 minutes at a time not more than one hour in a 24-hour period.

#5  Should not be able to drive more than 25 minutes away

#6  Should not be able to stand or sit more than 10 minutes at a time

#7  The patient should not be exposed to cold environment humid weather or excessive heat;

#8  She should not be in any stressful environment which will cause more stress and increase the pain level because of her fibromyalagia and neuralgia issues.

*Id.*

In the summer of 2018, Dr. Teklehaimanot sent updated medical records to Defendant, which included office visits throughout the spring.  Dr. Teklehaimanot reported similar findings of chronic pain complaints and strength measurements of 5/5.  Dr. Mustafa Mullah sent records from a March 2018 office visit where he noted Plaintiff was "in no acute distress" and diagnosed her with fibromyalgia and "[p]ain in unspecified joint."  In July of 2018, Dr. Teklehaimanot opined that Plaintiff could lift, push or pull no more than thirty pounds, no standing or sitting for too long and no stressful environment.  Dr. Teklehamanot's notes from Plaintiff's August 2018 office visit describe similar findings and treatment plans, however, he updated his restrictions and limitations again to prohibit "pushing,

pulling, lifting > 10 lbs, no stressful environment, no repetitive work, no sitting or standing for too long."

In September of 2018, Defendant conducted a 3 and ½ hour interview of Plaintiff.  Plaintiff indicated that she was able to sit in the same position for up to thirty minutes and then needed to stand up and stretch.  She further told the interviewer that she could only stand for 15 minutes and walk for five to ten minutes before she would need to rest.  She noted she could drive short distances, about 15 to 20 minutes from her home.  When the interviewer asked "what primary restrictions barred her from returning to work," she replied that she would be unable to work continuously for several hours due to chronic fatigue and poor concentration.

In October of 2018, Dr. Teklehaimanot sent Defendant a Disability Status Update and this time opined that Plaintiff should not "push, pull, lift > 5 lbs at a time."  In November of 2018, Defendant informed Plaintiff that "[b]enefits are being paid under the 24 month self-report limitation due to your medical condition and symptoms of chronic pain, myalgia, headaches and fibromyalagia," and would therefore end on December 18, 2018.

On November 11, 2018, Plaintiff's entire file was reviewed by Janet Shepard, who concluded Plaintiff's "perceived level of function is not consistent

with exam findings that have identified no systems abnormalities or evidence of impaired immobility."

On November 30, 2018, Tony Smith, D.O., a board-certified family medicine physician, wrote to Dr. Teklehaimanot to gain "a better understanding of his medical opinion" and to "discuss questions" Dr. Smith had concerning interpretation of medical data.  After receiving Dr. Teklehaimanot's response, Dr. Smith performed a file review and concluded, "the current evidence does not support Dr.[Teklehaimanot's] opined restrictions or an inability of Ms. Hamilton to work full time within the Sedentary range of functional demands[.]"  Dr. Smith noted the documented physical examination and diagnostic study findings are not consistent with the stated level of incapacitation.   Because Dr. Smith disagreed with Dr. Teklehaimanot's opinion concerning Plaintiff's capacity to perform full time work, Plaintiff's file was referred for a second level review by a Designated Medical Officer ("DMO"), Dr. Patrick J. Barrett, M.D., a board certified physician in physical medicine and rehabilitation.

Dr. Barrett opined that "[t]here is good consistency and consensus in lack of any neurologic injuries or other diagnoses that could prevent the claimant from working," and the "[h]istories obtained from the claimant repeatedly support Dr. Smith's opinion" given, the "claimant is independent with mobility, self-care tasks and cognitive tasks such as manages her finances . . . ."  Dr. Barrett also concluded

Plaintiff's exams show she is oriented, intact 5/5 strength, normal reflexes and gait. Dr. Barrett noted Plaintiff's other diagnostic examination results did not support Dr. Teklehaimanot's opinion of inability to perform sedentary work. Specifically, Dr. Barrett noted Plaintiff's June 2016 MRI revealed degenerative changes with no spinal cord impingement and mild radiculopathies and laboratory studies from 2018 revealed ANA screening and rheumatoid factors were negative, a barely high/borderline normal white cell count, as well as normal kidney, thyroid and liver studies.

On January 2, 2019, Defendant was notified of a fully favorable decision awarding disability benefits to Plaintiff from the Social Security Administration. On January 3, 2019, Defendant informed Plaintiff that it no longer considered her disabled as of December 19, 2018 but would continue to pay benefits under a reservation of rights while Defendant obtained additional medical records from Dr. Teklehaimanot and the Social Security Administration.

Once these additional records were obtained, Dr. Smith performed a second file review on April 2, 2019. Dr. Smith reached the same conclusion that the evidence did not support an inability to work full time within the sedentary range of functional demands. Plaintiff's file was thereafter referred to Dr. Barrett on April 4, 2019. Dr. Barrett opined that "consistently, claimant is noted to have largely normal physical examinations," and the "only consistent abnormality, with

good consensus, is that she has diffuse tenderness on palpation." Dr. Barrett noted the June 2016 MRI revealed findings that can be found in both asymptomatic and symptomatic individuals.

On April 12, 2019, Defendant informed Plaintiff that her benefits would end after 24 months because she was able to perform gainful sedentary occupational duties and she had no disabling condition not based primarily on self-reported symptoms. On May 17, 2019, Defendant's vocational expert conducted another vocational evaluation showing gainful occupations within Plaintiff's restrictions and limitations. Defendant sent a supplemental letter to Plaintiff on May 20, 2019 including an additional review of the Social Security Administration award regarding functional capacity.

Plaintiff administratively appealed Defendant's decision on November 6, 2019. Defendant obtained the opinion of Beth Schnars, M.D., a board-certified physician in internal medicine. Dr. Schnars examined all of Plaintiff's medical records, as well as the social security award and concluded Plaintiff's "pain complaints are in excess of identifiable anatomic or physiologic abnormalities," and "[b]ased on the weight of medical evidence submitted, there has been no significant associated clinically verifiable evidence of residual or progressive pathology consistent with the level of impairment precluding full time activity . . .

."  On January 9, 2020, Unum affirmed its original decision and Plaintiff filed the instant action on May 5, 2020.

## III.    LAW & ANALYSIS

A denial of benefits under an ERISA plan "is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 103, 115 (1989). The Sixth Circuit requires "a clear grant of discretion" to the administrator or fiduciary before replacing the *de novo* standard of review.  *Wulf v. Quantum Chem. Corp*., 26 F.3d 1368, 1373 (6th Cir. 1994).

"When conducting a *de novo* review, the district court must take a 'fresh look' at the administrative record but may not consider new evidence or look beyond the record that was before the plan administrator." *Wilkins v. Baptist Healthcare Sys.*, 150 F.3d 609, 616 (6th Cir. 1998). "When a court reviews a decision *de novo*, it simply decides whether or not it agrees with the decision under review." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990).  Under the *de novo* standard, the court does not presume the correctness of the administrator's benefits determination nor does it provide deference to its decision.  *Id.* at 966.

If a plan gives the administrator discretion, the administrator's decision is reviewed under the "highly deferential arbitrary and capricious standard." *Miller v.*

*Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991).  Such decisions are not

arbitrary and capricious if the decision to terminate benefits was the product of

deliberate principled decision-making and based on substantial evidence.  *Killian*

*v. Healthsource Provident Administrators, Inc.*, 152 F.3d 514, 520 (6th Cir. 2005).

"[T]he arbitrary or capricious standard is the least demanding form of

judicial review of administrative action and when it is possible to offer a reasoned

explanation, based on the evidence, for a particular outcome, that outcome is not

arbitrary or capricious."  *Davis v.  Kentucky Finance Cos. Retirement Plan*, 887

F.2d 689, 693 (6th Cir.  1989).  Thus, the Court can overturn the administrators

decision "only by finding that they abused their discretion—which is to say, that

they were not just clearly incorrect but downright unreasonable."  *Fuller v.  CBT*

*Corp.*, 905 F.2d 1055, 1058 (7th Cir.  1990); *see also Univ. Hosp. of Cleveland v.*

*Emerson Elec. Co.*, 202 F.3d 839, 846 (6th Cir.  2000).  "It is only if the court is

confident that the decisionmaker overlooked something important or seriously

erred in appreciating the significance of the evidence that it may conclude that a

decision was arbitrary and capricious."  *Ericksen v.  Metro. Life Ins.  Co.*, 39  F.

Supp.2d 864, 870 (E.D. Mich.  1999).

Defendant argues that the arbitrary and capricious standard of review applies

to this matter.  Plaintiff counters that the *de novo* standard of review applies.  In

this case, the Plan expressly grants Defendant discretion, which renders the

standard of review arbitrary and capricious.  Specifically, the Plan states:

> When making a benefit determination under the policy, Unum has
> discretionary authority to determine your eligibility for benefits and to
> interpret the terms and provisions of the plan.

Plaintiff argues this language is not part of the Plan because it is not in the policy's

table of contents, however, the language expressly vests discretion in Defendant to

make benefits decisions, and this language controls.  *See McClain v. Eaton Corp.*

*Dis. Plan*, 740 F.3d 1059, 1063 (6th Cir. 2014).

Additionally, Plaintiff's argument that *de novo* review applies because

Defendant allegedly failed to comply with a regulatory procedure is without legal

basis.  The only authority Plaintiff provides to support this argument is inapposite

and non-binding on this Court, and in any event, Plaintiff fails to articulate how

she was precluded from pursuing her rights.  Based on these reasons, the Court

concludes the correct standard of review is arbitrary and capricious.

Next, the Court finds that Plaintiff received a full and fair review of her

claim and the denial of her claim was not arbitrary or capricious.  Defendant

properly found that Plaintiff was able to perform gainful occupational sedentary

duties.  Defendant referred Plaintiff's file to two physicians for review.  In

preparing their reports, these reviewers spoke with or corresponded in writing with

Dr. Teklehaimanot.  It was reasonable for Drs. Smith and Barrett to rely on the

absence of objective clinical findings in the medical records to support functional limitations precluding sedentary employment and a disability finding under the Plan definition.  Drs. Smith and Barrett both relied on the fact Plaintiff's MRIs, EMGs and laboratory results did not support total incapacity from sedentary employment in light of Plaintiff's mobility, self-care and cognitive abilities and conservative treatment of physical therapy, trigger point injections and medication. It is well settled in this circuit that it is proper and reasonable for the plan administrator to require objective evidence of functional impairment precluding sedentary employment.  *See Bishop v. Metro. Life Ins. Co.*, 70 Fed. Appx. 305, 311 (6th Cir.  July 10, 2003); *Rose v. Hartford Fin. Servs. Group, Inc.*, 268 Fed. Appx. 444 (6th Cir. March 11, 2008); *Fant v. Hartford Life and Accident Ins. Co.*, No. 09-12468, 2010 WL 3324974, *9 (E.D. Mich. Aug. 20, 2010); *McCulloch v. Metro. Life Ins. Co.*, No.  04-10126, 2006 WL 897574, *12 (E.D. Mich. April 6, 2006).

Moreover, all of the file reviewers considered the Social Security Administration's award, but nonetheless concluded Plaintiff was not disabled under the Plan because the medical evidence did not support restrictions and limitations precluding sedentary work.  As such, Plaintiff was not entitled to benefits beyond 24 months under the Plan terms.   It was not unreasonable for Defendant's physician reviewers to reject Dr. Teklehaimanot's varying opinions

concerning Plaintiff's restrictions and limitations when a complete review of the medical records revealed conservative treatment of pain medication, injections, and physical therapy coupled with a lack of objective clinical findings to support severity of pain. This rejection was reasonable in light of the fact Plaintiff's examinations consistently found normal gait and strength and she only had mild abnormalities on imaging studies that are present in asymptomatic as well as symptomatic individuals.

Numerous courts have upheld adverse determinations based on opinions of physicians conducting a file review. *See Balmert v. Reliance Standard Life Ins. Co.*, 601 F.3d 497, 504 (6th Cir. 2010) (reliance on the opinion of an independent medical consultant is reasonable so long as the administrator did not "totally ignore" the opinion of the treating physician); *Douglas v. General Dynamics Long Term Disability Plan*, 43 Fed. Appx. 864, 869-70 (6th Cir. Aug. 7, 2002). Furthermore, plan administrators are not required to accept a treating physician's disability finding over the opinion of an independent medical expert that the claimant is not functionally impaired to support disability. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts

with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003).

Unlike the plaintiff in *Shaw v. AT&T Umbrella Plan No. 1*, 795 F.3d 538 (6th Cir. 2015), there is no evidence that Defendant's physician reviewers have had their "conclusions questioned in numerous federal cases," as the reviewers had in *Shaw*. *Id*. at 551. Nor is there evidence in this case that Defendant's physician reviewers selectively reviewed Plaintiff's medical records as the physician reviewers had done in the *Shaw* plaintiff's case. *Id*. at 449. Finally, Defendant's physician reviewers made reasonable efforts to communicate with Dr. Teklehaimanot and considered his responses when evaluating Plaintiff's claim. This was unlike the file reviewers in *Shaw*, who gave the plaintiff's treating physician a mere 24 hour period to respond. The circumstances present here are distinguishable from those present in *Shaw*, thus Plaintiff's reliance on *Shaw* is misplaced. Because the Court concludes Defendant's determination that Plaintiff can perform the duties of several gainful sedentary occupations was not arbitrary and capricious, the Court need not consider Defendant's alternative bases for denying benefits under the Plan.

## IV.   CONCLUSION

For the reasons stated above, Defendant's Motion to Affirm the ERISA Decision [#13] is GRANTED. Plaintiff's Motion for Judgment on the Administrative Record [#12] is DENIED.  This cause of action is dismissed.

SO ORDERED.

Dated:  December 28, 2021                         /s/ Gershwin A. Drain
                                                  GERSHWIN A. DRAIN
                                                  U.S. DISTRICT JUDGE


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 28, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager